## WOMEN ELIGIBLE FOR APPOINTMENT AS DEPUTY ASSESSORS.

### Common Pleas Court of Cuyahoga County.

STATE OF OHIO, EX REL JEANNETTE MORGAN, v. THE DISTRICT
BOARD OF ASSESSORS ET AL.

### Decided, March 27, 1914.

*Office and Officer—Deputy Assessors do Not Exercise Independent Public
    Duties—Are Controlled by a Superior—And are Not Public Officers
    —Trend of Public Opinion as to Performance of Public Duties by
    Women.*

A deputy assessor of property for purposes of taxation, appointed un-
    der the Warnes law, is not an officer and the position which he holds
    is not an office within the meaning of the state Constitution; and
    a woman is therefore eligible to appointment to that position.

*Dawley, Ewing, Counts & Terrell,* for plaintiff.
*Robert M. Morgan,* contra.

STEVENS, J.

The question to be decided in this case arises upon demurrer to
the relator's petition for a writ of mandamus.  She prays that a
writ of mandamus may issue commanding the board of district
assessors to include her name on the pay roll of said board and

to certify her claim for compensation as a deputy assessor, she having been appointed from a list of eligibles furnished by the civil service commissioners, and having been removed by the board of district assessors.

The propriety of the particular remedy is not questioned by counsel, and all the salient facts in the case are admitted.

The relator was removed from her position and compensation denied her because the board of district assessors had been advised by counsel, subsequent to her appointment, that under the Constitution and laws of the state a woman is not eligible to the position of deputy assessor of property for taxation purposes, as provided by act of the General Assembly, passed April 18, 1913 (103 Ohio Laws, 786-804), and known as the Warnes law.

Article XV, Section 4 of the Constitution of Ohio provides that:

"No person shall be elected or appointed to any office in this state, unless he possesses the qualifications of an elector."

Only male citizens, twenty-one years of age and having a prescribed residence, have the "qualifications of an elector," according to Article V, Section 1 of the Constitution.

The sole question then to be decided is, whether the provisions of the Warnes law make the position of deputy assessor an office and its incumbents an officer. If such is the case, then the application of the relator must be denied. If such is not the case, then the application should be granted, for there has appeared neither in argument nor from any other considerations, any reason for denying to a woman, because she is a woman, such possible opportunity to engage in the public service.

To constitute a public office, it is essential that certain independent public duties, a part of the sovereignty of the state, should be appointed to it by law, to be exercised by the incumbent, in virtue of his election or appointment to the office thus created and defined, and not as a mere employee subject to the direction and control of some one else. *State, ex rel,* v. *Jennings,* 57 O. S., 415.

Authority and power relating to the public interests conferred by statute, and which may be vested in an individual by election or appointment, create an office. A public office is the right, authority and duty, created and conferred by law, by which an individual is invested with some of the sovereign·functions of the government to be exercised by him for the benefit of the public. It implies·a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office. In its effects it will bind the rights of others and be subject to revision and correction only according to the standing laws of the state. The performance by a deputy or an assistant of many or indeed all of the duties of his superior does not of itself constitute such assistant an officer; and this may be the case even though the duties of the assistant are prescribed by statute. 7 O. S., 546; *Mechem on Public Offices*, Section 1; 52 O. S., 346, 356.

The foregoing, I think, include the essentials of the judicial definitions of an office, and it remains only to determine whether the provisions of the Warnes law bring the position of deputy assessor within the terms of the definition. I will not quote from that act in detail, but only so much as will fairly present the provisions which it is claimed on the one hand make the position an office, and which it is urged with equal confidence on the other hand refute that claim.

The district assessor is appointed by the Governor. He must be "an elector of the district." He appoints such number of deputy assessors as may be prescribed for his district by the tax commission. The deputy assessor holds his office or employment for such time as may be prescribed by the tax commission. The district assessor annually, under the direction and supervision of the tax commission, "lists and values for taxation all real and personal property subject to taxation in the county constituting his assessment district. * * * The deputy assessor shall have and perform, under the direction of the district assessor, and in such territory as may be assigned to him by the district assessor, all powers and duties of the district assessor," excepting certain duties prescribed by law and to which refer-

ence is made in the act. "The district assessor or his deputy shall perform or cause to be performed all the duties, exercise all the powers and be subject to all the liabilities and penalties devolved, conferred or imposed by law" upon township, ward and precinct assessors, which latter positions the act abolishes. The correction of returns, the listing and valuation of omitted property, and various other powers formerly vested in the county auditor are entrusted to the district assessor. The district assessor makes up the auditor's tax list and the treasurer's duplicate. The district assessor examines and revises all returns of property, scrutinizes the valuation and corrects the statements or returns. "The salaries or compensations of deputy assessors and other employees of the district assessor shall be fixed by the district assessor, subject to the approval of the tax commission." The salary of the deputy is paid upon certification by the district assessor. The deputy is required to take oath "faithfully and impartially to assess all real and personal property in the territory assigned to him by the district assessor, and otherwise faithfully to perform all the duties imposed upon him, and impartially to exercise the powers vested in him by law."

Compounding now all of these elements with the others of like character detailed in the act, can it be said that there results an office within the meaning of the law?

We need not go behind the more recent decisions of our Supreme Court for the answer. The Jennings case (57 O. S., 415) names the requisite elements of a "public office."

(a)   The incumbent must exercise certain independent public duties, a part of the sovereignty of the state.

(b)   Such exercise by the incumbent must be in virtue of his election or appointment to the office.

(c)   In the exercise of the duties so imposed, he can not be subject to the direction and control of a superior officer.

The position of deputy assessor does not measure up to these specifications. Plainly, it seems to me, his are not independent public duties. He performs his duties "under the direction and control of the district assessor, and in such territory as may be

assigned to him by the district assessor." The provision that he shall have and perform, under such direction and supervision, all the powers and duties of the district assessor, is in effect only a provision which enables the district assessor to appoint deputies who shall assist him in the discharge of the extensive and detailed labor of listing and valuing property. All ultimate matters, all acts of "sovereignty," must be performed by the district assessor, and for them he alone is responsible. The relation, in its essentials, does not differ from that existing between the sheriff or the clerk and his deputies.

To say that the Warnes law throws about the shoulders of a deputy the robe of "sovereignty" is to indulge in a metaphor whose applicability the terms of the act and the entire tenor of the act, it seems to me, disclaim. The duties of the deputy are appointed to him by law, in the same sense as are the duties of any deputy who, of course, can not exercise them until he gets the "job." The difference in the provision as to duties is only one of more elaborate detail. It would be entirely within the power of the district assessor to withhold from the deputy the opportunity of engaging in the exercise of any of the duties for which he was appointed. This is clearly established under the provisions of Section 4 of the act. This being so, what becomes of the "sovereignty" of the deputy, of his "independent" right to exercise certain public duties, free from the "direction and control" of a superior?

In principle, a very close parallel exists between the case here presented and that of *Palmer* v. *Ziegler*, 76 O. S., 210, which holds that a superintendent of a county infirmary is not a public officer. An examination of that case shows that many duties were prescribed for the superintendent by the act which provided for his appointment, and these duties certainly require the use of as much discretion and the exercise of as much "sovereignty" as are required of a deputy assessor whose work is not much different from that of a gatherer of statistics.

To me, the conclusion is irresistible, that the position of deputy assessor is not "an office," and that the relator is entitled to the relief afforded by a writ of mandamus.

But if, as is sometimes the case, there appears to be such a diversity in precedents and such a conflict in authorities as to make difficult any certainty of opinion when based upon such authorities and precedents, there may be properly, it seems to me, a resort to other legally valid considerations.

Judge Welch, in rendering the opinion of the Supreme Court (25 O. S., 21, 25), when it held that a woman might be a deputy clerk of the probate court, said that the provisions of Section 4, Article XV of the Constitution, limiting the holding of office to those having the qualifications of electors, were "disenabling and should therefore receive a restricted rather than an enlarged interpretation." We are not required in this case to search precedents with a view to finding some judicially defined avenue of escape from disaster. No reason can be adduced to justify any possible claim that a woman can not perform the duties of this position as faithfully and efficiently as could a man. The relator's appointment followed upon her creditably passing a civil service examination. To bar her from such employment, unless the law clearly requires it, would be to exercise a discrimination which could be sanctioned neither by reason nor a sense of justice.

The trend of matured public opinion should also be considered in the application of legal principles and precedents to new conditions arising in the course of development of social and political ideas and measures.

The amendment to Article V, Section 1 of the Constitution submitted to the people in 1912, and known as the Women's Suffrage Amendment, would have made women eligible to office. The male voting portion of the population, whose privilege alone it was to pass upon this proposal, indicated rather decisively by its vote its unreadiness to accord the franchise to women. But the only feature of that proposal which was popularly discussed was its effect in giving women the ballot. There was no discussion of its effect in giving women the right to hold office; and that phase of it apparently received no consideration. A year later, however, there was submitted to the people a proposal expressly

making it possible for women to hold certain offices, and this amendment was adopted by an overwhelming vote. Whatever reluctance, therefore, may exist within the present body of electors toward making women voters has not been extended to a denial to the public of the benefit of the services of women in those public offices comprehended by the amendment.

I refer to these latter considerations, as I have indicated, simply for the purpose of calling attention to some of the aids to interpretation of the law to which resort may be had when conflicting precedents leave one in a state of doubt; but I am satisfied in this case to base my conclusions on the principles expressed and the precedents established by our Supreme Court.

A writ of mandamus may be issued in accordance with the prayer of the petition.